UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANA DYER,

      Plaintiff,

v.                            Case No. 8:24-cv-2867-VMC-SPF

COLOPLAST CORP. and COLOPLAST
MANUFACTURING US, LLC,

      Defendants.

_____/

**ORDER**

This matter is before the Court on consideration of Defendant Coloplast Corp.'s ("Coloplast") Rule 702 Motion to Exclude Expert Opinions of Neeraj Kohli, M.D. (Doc. # 92), filed on April 15, 2026. Plaintiff Diana Dyer responded on May 6, 2026. (Doc. # 120). Coloplast replied on May 22, 2026. (Doc. # 137). The Motion is granted in part and denied in part.

## I.   Background

In December 2020, Ms. Dyer "was surgically implanted with an Aris™ Trans-Obturator Sling System (hereinafter the 'Aris'), a pelvic mesh product and medical device designed, manufactured, and marketed by Defendants," which "was intended to treat pelvic organ prolapse and stress urinary incontinence." (Doc. # 1 at 1). Ms. Dyer alleges that neither

1

she "nor her healthcare providers were warned that the Aris was defective and negligently designed and manufactured." (Id. at 1-2). Ms. Dyer claims that she "has suffered, and continues to suffer, debilitating injuries" "[a]s a result of being surgically implanted with Defendants' unreasonably dangerous defective pelvic mesh device." (Id. at 2).

Ms. Dyer initiated this action to recover damages for her claimed injuries. (Id.). In the complaint, Ms. Dyer asserts three causes of action: (1) negligence, (2) strict liability design defect, and (3) strict liability failure to warn. (Id. at 33-47).

The case then proceeded through discovery. Ms. Dyer retained as a general and specific causation expert Dr. Neeraj Kohli, "an active surgeon, teacher, entrepreneur, inventor, lecturer, and researcher." (Doc. # 111-1 at 4). Dr. Kohli is "a board certified Ob/Gyn and fellowship trained urogynecologist practicing strictly in the field of Urogynecology and Reconstructive Pelvic Surgery since 1997." (Id. at 1). Dr. Kohli has "extensive experience with pelvic repair surgery of all types with and without biologic or synthetic materials." (Id. at 4). Dr. Kohli has used and is familiar with the Aris device, "including its technique of insertion, efficacy, and risks." (Id.). As chief medical

2

officer of a medical device company, Dr. Kohli has "experience and exposure in development of medical devices including FDA approval and material safety standards." (Id.). He was involved in developing and reviewing the Instructions for Use {"IFU") for his company's product, a "4 way catheter for diagnostic cystoscopy." (Id.).

Dr. Kohli has "reviewed numerous [IFUs] for a variety of medical products including mesh products in order to understand the proper way to use the devices and to gain knowledge about the complications and adverse events associated with the devices." (Id.). Dr. Kohli has "extensive clinical experience with IFUs and instructing patients about the adverse events and risks contained in IFUs and those related to surgery." (Id.).

Dr. Kohli offers the following general causation opinions: (1) the "inherent properties of polypropylene mesh make it an unsuitable material for placement in the transobturator space," (2) the Aris is "defective in its technique and [its] material design," (3) the Aris "has an unacceptably high rate of mesh exposure/erosion, dyspareunia, and chronic pain complications," (4) the Aris's IFU "and brochure warnings were inadequate to allow physicians to make responsible treatment choices and allow patients to give

3

proper informed consent," (5) Coloplast did not perform adequate safety testing on the Aris and failed to warn about known "complications related to transobturator mesh placement," (6) there "are safer alternatives that are equally or more effective" than the Aris, and (7) the risks of the Aris outweigh its benefits. (Id. at 12-13).

As to specific causation, Dr. Kohli opines that the "vaginal/groin pain and persistent [overactive bladder]/incontinence suffered by Ms. Dyer is the direct result of the defects described throughout this report." (Id. at 32). Dr. Kohli arrived at this opinion after performing a differential diagnosis. (Id. at 27-28). Dr. Kohli "first ruled in the mesh as a primary cause because [Ms. Dyer's] pelvic pain symptoms began . . . immediately after mesh implantation and are unique to mesh placement in the vagina and particularly the Aris" transobturator sling. (Id. at 28-29). Dr. Kohli then "ruled out a number of other conditions as the causes of her current injury, including vaginal atrophy and lumbar disc involvement." (Id. at 29).

Now, Coloplast moves to exclude the opinions of Dr. Kohli. (Doc. # 92). Ms. Dyer has responded (Doc. # 120), and Coloplast has replied. (Doc. # 137). The Motion is ripe for review.

4

## II.   **Legal Standard**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589-90. District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. Id.

## III. **Analysis**

Coloplast challenges the reliability of Dr. Kohli's specific causation opinions. (Doc. # 92 at 5-15). Coloplast also argues that many of Dr. Kohli's general causation opinions are unreliable, unhelpful, or irrelevant. (Id. at 15-28). Coloplast further argues that Dr. Kohli is unqualified to opine on the adequacy of the Aris's safety testing and IFU. (Id. at 27-29). Finally, Coloplast contends that the Court should exclude Dr. Kohli's opinions "stating legal standards, conclusions, and terms of art, as well as opinions about Coloplast's knowledge, state of mind, or conduct." (Id. at 29). The Court addresses each contention in turn.

### A.    Dr. Kohli's Case-Specific Opinions

Coloplast argues that Dr. Kohli's case-specific opinions are not reliable because he based his differential diagnosis on a cherry-picked selection of medical records and did not adequately rule out alternative possible causes of Ms. Dyer's injuries. (Doc. # 92 at 5-15). The Court is not persuaded.

"Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

7

Coloplast argues that Dr. Kohli's specific causation opinions are unreliable because he: (1) failed to adequately consider medical records that did not support his opinion, (2) only reviewed the medical records provided to him by Ms. Dyer's counsel, and (3) did not conduct a pelvic exam of Ms. Dyer. (Doc. # 92 at 5-10). None of the alleged factual discrepancies or mischaracterizations warrant excluding Dr. Kohli's opinions.

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Coquina Invs. v. Rothstein, No. 10-60786-CIV, 2011 WL 4949191, at *8 (S.D. Fla. Oct. 18, 2011) (quoting Synergetics, Inc. v. Hurst, 477 F.3d 949, 955-56 (8th Cir. 2007)). Coploast's challenges go to the weight rather than the admissibility of Dr. Kohli's opinions. See X Soc. Media LLC v. X Corp., No. 6:23-cv-1903-JA-NWH, 2025 WL 2578249, at *4 (M.D. Fla. Sept. 5, 2025) ("Plaintiff argues Professor Golder 'cherry-picked' evidence by declining to evaluate evidence of actual confusion and by emphasizing factors favorable to Defendant. But such criticisms ordinarily go to weight, not admissibility, absent methodological unreliability."

8

(internal citation omitted)); <u>Demeritt v. Wal-Mart Stores E.,</u> <u>LP</u>, No. 6:20-cv-89-PGB-GJK, 2021 WL 2835363, at *3 (M.D. Fla. May 17, 2021) ("Dr. Koenigsberg's failure to . . . review Plaintiff's entire medical history, review every available deposition, or conduct a physical examination of Plaintiff does not warrant exclusion under the <u>Daubert</u> framework.").

Coloplast also argues that Dr. Kohli's differential diagnosis is unreliable because he did not adequately rule out alternative possible causes of Ms. Dyer's injuries. (Doc. # 92 at 11-15). The Court disagrees.

Differential diagnosis is "a medical process of elimination whereby the possible causes of a condition are considered and ruled out one-by-one, leaving only one cause remaining." <u>Chapman v. Procter & Gamble Distrib., LLC</u>, 766 F.3d 1296, 1308 (11th Cir. 2014) (internal quotation marks omitted). "A reliable differential analysis need not rule out all possible alternative causes, but it must at least consider other factors that could have been the sole cause of the plaintiff's injury." <u>Id.</u> at 1308-09 (internal quotation marks omitted).

Dr. Kohli explained his differential diagnosis as follows. First, he "ruled in the mesh as a primary cause because [Ms. Dyer's] pelvic pain symptoms began . . .

9

immediately after mesh implantation and are unique to mesh placement in the vagina and particularly the Aris" transobturator sling." (Doc. # 111-1 at 28-29). Dr. Kohli noted that Ms. Dyer "has no significant medical, surgical, or social history or risk factors contributing to her present mesh complication symptoms or current pelvic floor complaints." (Id. at 29). Dr. Kohli "ruled out a number of other conditions as the causes of her current injury, including vaginal atrophy and lumbar disc involvement." (Id.). Dr. Kohli stated that "the mere fact a woman has vaginal atrophy does not mean she will suffer the injuries that Ms. Dyer has endured – her presentation was specific to mesh use and her pain symptoms began specifically after placement of the transobturator Aris sling mesh." (Id.). Dr. Kohli noted that Ms. Dyer "denied any prior diagnosis of sciatica, lumbar disc disease, or sacroiliac joint disorders," but acknowledged "that records from other providers later suggested lumbar degenerative changes that she was unaware of before surgery." (Id. at 26). In ruling out lumbar disc involvement, Dr. Kohli explained that "[m]any women have mild variants of lumbar disc herniation," which "does not typically present with acute onset groin/pelvic pain immediately after sling mesh placement." (Id. at 30).

10

Moreover, Dr. Kohli noted that "therapies including steroid injection to the lumbar area were ineffective in providing any relief further reducing the chance of lumbar pathology contributing to her symptoms." (Id.). Dr. Kohli acknowledged that Ms. Dyer also underwent an anterior/posterior colporrhaphy, or vaginal wall repair, at the time the Aris was implanted but stated that such procedure "does not typically cause significant myofascial pain or obturator/pudendal neuralgia." (Id. at 16, 30). Dr. Kohli opined that Ms. Dyer's "subsequent treatments including two separate mesh revision surgeries confirm the clinical etiology of her presenting pain symptoms related to the ARIS suburethral mesh." (Id. at 29-30).

Coloplast argues that Dr. Kohli failed to adequately rule out lumbar disc and sacroiliac joint issues, sciatica, and surgical positioning as being sources of Ms. Dyer's pelvic pain. (Doc. # 92 at 12). However, Dr. Kohli explained that he ruled out lumbar disc involvement as it typically would not cause the symptoms experienced by Ms. Dyer immediately following mesh implantation and as post-surgical therapies to the lumbar area were not effective. (Doc. # 111-1 at 30). With respect to sacroiliac joint issues and sciatica, Coloplast does not challenge Dr. Kohli's assertion that Ms.

11

Dyer denied suffering from such problems prior to the mesh implantation. (Id. at 26). Further, Coloplast does not allege, let alone establish, that these conditions or Ms. Dyer's position during the surgery could be the sole cause of her claimed pelvic injuries. Accordingly, this is not a basis for finding Dr. Kohli's opinion unreliable. See Chapman, 766 F.3d at 1308-09 ("A reliable differential analysis need not rule out all possible alternative causes, but it must at least consider other factors that *could have been the sole cause* of the plaintiff's injury." (internal quotation marks omitted) (emphasis added)); Messina v. Ethicon, Inc., No. 6:20-cv-1170-PGB-LHP, 2020 WL 13441462, at *5 (M.D. Fla. Dec. 21, 2020) ("[T]he Defendants['] uncorroborated allegations are inadequate to cast doubt on Dr. Hoyte's differential diagnosis.").

Finally, Coloplast argues that Dr. Kohli's opinion that the Aris caused Ms. Dyer to suffer persistent overactive bladder and incontinence is unreliable as Dr. Kohli failed "to rule out that Ms. Dyer's pre-existing overactive bladder and prior incontinence are the cause of her current urinary complaints." (Doc.# 92 at 14). In response, Ms. Dyer states that she "will not claim at trial that the Aris caused or

contributed to [her] incontinence or overactive bladder." (Doc. # 120 at 11). Therefore, this issue is moot.

The Court finds Dr. Kohli's methodology regarding the cause of Ms. Dyer's pelvic pain sufficiently reliable. The alleged flaws in Dr. Kohli's methodology raised by Coloplast should be addressed during cross-examination. See Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)). Thus, the Motion is denied as to the exclusion of Dr. Kohli's specific causation opinions.

B.    **Dr. Kohli's General Causation Opinions**

1.    **Surgical Technique**

Dr. Kohli opines that the Aris "was defective in its technique and it[s] material design. This includes blind insertion of a permanent device through the transobturator space, through and in close proximity to vital anatomic structures including muscles and nerves." (Doc. # 92-1 at 12).

13

Coloplast argues that "Dr. Kohli's criticisms about the Aris's transobturator approach amount to no more than personal opinions on a particular surgical technique, which does not speak to a 'defect' in the Aris that resulted in injury," and, therefore, are irrelevant. (Doc. # 92 at 15-16). Coloplast also contends that "Dr. Kohli's criticism that Aris 'requires blind placement'" is irrelevant because "he admits that 'all aspects of vaginal meshes have some level of blind placement,' including the retropubic approach he uses and prefers." (Id. at 16). The Court disagrees.

As another court in this Circuit recognized in a products liability case involving the Aris, "[a] comparison of the risks associated with implanting in the transobturator region as opposed to the retropubic region is relevant to the defect analysis because the location of the device within the body and the method of insertion are inherent attributes of the device's design." Arevalo v. Coloplast Corp., No. 3:19-cv-3577-TKW-MJF, 2020 WL 3958505, at *3 (N.D. Fla. July 7, 2020), aff'd sub nom. Arevalo v. Mentor Worldwide LLC, No. 21-11768, 2022 WL 16753646 (11th Cir. Nov. 8, 2022). Accordingly, Dr. Kohli's opinions regarding the transobturator approach are not irrelevant.

14

Coloplast further argues that "Dr. Kohli's blind placement opinion is also divorced from any scientifically reliable methodology." (Doc. # 92 at 17). Specifically, Coloplast notes that Dr. Kohli relies upon scientific studies that "discuss the effects of mesh placed in the **_abdominal_** wall" rather than the obturator space as well as other studies "concerning **_hernia mesh_** placed in rabbits and dogs." (Id.) (emphasis in original). The Court is not persuaded.

"[I]n most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1345 (11th Cir. 2003). However, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Here, Coloplast has not demonstrated that there is too great an analytical gap between the studies Dr. Kohli cited and his opinion.

The Motion is denied as to this issue.

### 2.    Defective Design

Dr. Kohli opines that "[t]he inherent properties of polypropylene mesh make it an unsuitable material for placement in the transobturator space. . . . This is

15

especially true of the Coloplast mesh given its increased weight and stiffness." (Doc. # 92-1 at 5).

Coloplast argues that the Court should exclude Dr. Kohli's opinion that the Aris is defectively designed because "Dr. Kohli does not provide support for his opinions on Aris'[s] design properties or that the Aris is unsuitable for use in the transobturator space." (Doc. # 92 at 18). However, Dr. Kohli cites multiple scientific articles to support his opinions regarding the properties of polypropylene mesh and its unsuitability for use in the transobturator space. (Doc. # 92-1 at 5-9). Accordingly, Coloplast has not demonstrated that Dr. Kohli's opinions are unreliable. See In re Boston Sci. Corp. Pelvic Repair Sys. Prods. Liab. Litig., No. MDL 2326, 2018 WL 2425955, at *2 (S.D.W. Va. May 29, 2018) (denying motion to exclude Dr. Kohli's opinions on the properties of polypropylene mesh as "Dr. Kohli cite[d] to numerous medical articles in support of his opinions").

Coloplast further argues that Dr. Kohli's opinions are unhelpful to the jury because Dr. Kohli "fails to provide a measuring stick for assessing the propriety of Aris's specifications, and instead advances a 'trust me, I'm a doctor' approach." (Doc. # 92 at 20). The Court disagrees.

16

Expert testimony must assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citation omitted). "[T]he court must ensure that the proposed expert testimony is relevant to the task at hand, . . . i.e., that it logically advances a material aspect of the proposing party's case." Allison v. McGhan, 184 F.3d 1300, 1312 (11th Cir. 1999) (internal quotation marks omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted).

To succeed on any of her claims, Ms. Dyer must prove that the Aris "is defective or unreasonably dangerous." Brown v. DePuy Orthopaedics, Inc., 978 F. Supp. 2d 1266, 1272 (M.D. Fla. 2013). Dr. Kohli explains the basis for his opinion that the properties of polypropylene mesh make it unsuitable for use in the transobturator space and cites to multiple scientific studies. (Doc. # 92-1 at 5-9, 13). Dr. Kohli's opinion logically advances a material aspect of Ms. Dyer's case: whether the Aris is defective or unreasonably dangerous. This information is "beyond the understanding of

17

the average lay person." Frazier, 387 F.3d at 1262 (citation omitted). Thus, Dr. Kohli's opinions would be helpful to the jury.

The Motion is denied as to this issue.

### 3.    Unacceptably High Rate of Complications

Dr. Kohli opines that the Aris "has an unacceptably high rate of mesh exposure/erosion, dyspareunia, and chronic pain complications." (Doc. # 92-1 at 16). Coloplast argues that Dr. Kohli's opinion is unreliable because "Dr. Kohli identifies no methodology (much less a reliable one) for determining what constitutes an acceptable versus 'unacceptably high' rate of complications." (Doc. # 92 at 21). The Court agrees.

Dr. Kohli does not identify the alleged complication rate of the Aris or explain the scientific basis for his opinion that the Aris's rate is "unacceptably high." Accordingly, Dr. Kohli's opinion on this issue is unreliable and is excluded. See Arevalo, 2020 WL 3958505, at *4 (excluding Dr. Kohli's opinion that the Aris has an unacceptably high rate of complications because Dr. Kohli did not identify any "methodology for determining what constitutes an acceptable versus 'unacceptably high' rate" (internal quotation marks omitted)); In re Boston Sci. Corp.,

18

2018 WL 2425955, at *3 ("Dr. Kohli offers no scientific support or methodology for opining on what constitutes an 'unacceptably high' complication rate. The unreliability of Dr. Kohli's opinion is highlighted by the fact that he does not even opine on what the actual complication rates are.").

The Motion is granted as to this issue.

### 4.    <u>Safer Alternatives</u>

Dr. Kohli opines that "the Burch procedure, autologous fascial slings, and appropriate retropubic slings are safer than the Aris." (Doc. # 92-1 at 30). The Court will first consider Coloplast's challenges to Dr. Kohli's opinions regarding safer alternative procedures and then will address Coloplast's arguments regarding Dr. Kohli's opinions on safer alternative products.

### a.    <u>Safer Alternative Procedures</u>

Coloplast argues that Dr. Kohli's opinions regarding the Burch procedure and autologous fascial slings are irrelevant as they are not safer alternative product designs for a transobturator sling but are "entirely different *surgeries*." (Doc. # 92 at 22) (emphasis in original). In response, Ms. Dyer contends that "Dr. Kohli's opinion that alternate medical procedures, the use of [the] Burch procedure or autologous or allograft slings, are safer than the Aris and

were feasible for Ms. Dyer are relevant to demonstrating that the Aris's inherent risks outweigh its benefits." (Doc. # 120 at 19-20). The Court agrees with Ms. Dyer.

"In Florida, a plaintiff need not demonstrate the existence of a reasonable alternative design for a strict liability design defect claim." Geery v. Ethicon, Inc., No. 6:20-cv-1975-RBD-LRH, 2021 WL 2580144, at *5 (M.D. Fla. Apr. 9, 2021); Aubin v. Union Carbide Corp., 177 So. 3d 489, 511 (Fla. 2015). "In proving strict liability, Florida courts use both the consumer expectations test and the risk utility test." Geery, 2021 WL 2580144, at *5. "[U]nder the risk utility test, a product is considered unreasonably dangerous when the risk of danger in the design outweighs the benefits." Id. (internal quotation marks omitted).

Dr. Kohli's opinions regarding safer alternative procedures are relevant to the question of whether the risks of the Aris outweigh the benefits. See Id. ("Dr. Rosenzweig's opinions are relevant to the risk utility test because it will assist the jury in determining whether the risks of the TVT-O and Prolift outweighed the benefits, given the safety of alternative medical procedures."); Messina v. Ethicon, Inc., No. 6:20-cv-1170-PGB-LHP, 2020 WL 7419586, at *4 (M.D. Fla. Dec. 17, 2020) ("Dr. Rosenzweig's opinion that alternate

20

medical procedures were safe and effective — that is, they are safer than the accused product and were feasible for Ms. Messina — are relevant to demonstrating that the TVT Abbrevo's inherent risks outweigh its benefits."); Ellerbee v. Ethicon, Inc., No. 8:20-cv-1514-TPB-AEP, 2020 WL 4815818, at *3 (M.D. Fla. Aug. 19, 2020) (declining to exclude expert's opinions on safer alternative procedures as they were relevant to the pelvic mesh products liability action).

Alternatively, Coloplast argues that Dr. Kohli's opinions are unreliable. (Doc. # 92 at 24-25). Regarding the Burch procedure, Coloplast notes that "Dr. Kohli admits that the Burch procedure results in a higher risk of having voiding dysfunction and needing a catheter" and that Dr. Kohli has "all but given up using Burches." (Id. at 24) (internal quotation marks omitted). Coloplast asserts that "[a]s for tissue-based slings — both autologous fascial and allograft slings — Dr. Kohli admits many people feel like there are advantages to synthetic mesh over autologous slings." (Id.). The Court is not persuaded.

"[C]ontrary evidence goes not to the admissibility of the expert testimony; rather, it goes to the weight of that testimony." Souder v. Floyd Cnty., No. CIV.A. 4:03CV0085HLM, 2005 WL 6218033, at *6 (N.D. Ga. Mar. 22, 2005). Here,

21

Coloplast has not demonstrated that Dr. Kohli's opinions are unreliable – it has only pointed to countervailing facts to undermine the credibility of Dr. Kohli's opinions. This is an issue to be addressed in cross-examination. See Quiet Tech., 326 F.3d at 1345 (holding that the identification of "flaws in generally reliable scientific evidence" that "impugn the accuracy of" the evidence "is precisely the role of cross-examination"); Maiz, 253 F.3d at 666 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)).

### b.    Safer Alternative Products

Coloplast further argues that "Dr. Kohli's 'safer alternative' opinions about polypropylene retropubic slings and PVDF mid-urethral slings are unreliable." (Doc. # 92 at 25). The Court disagrees.

Coloplast contends that "Dr. Kohli makes unsupported, inferential leaps from the cited literature to find that retropubic and mid-urethral PVDF slings are safer than the Aris." (Id. at 26). However, Coloplast's challenge to "the sufficiency of scientific literature on which" Dr. Kohli relies "is a matter that more properly goes to the weight of

22

the evidence and can be probed during cross-examination." Swintelski v. Am. Med. Sys., Inc., No. 20-60410-CIV, 2021 WL 4527451, at *4 (S.D. Fla. Aug. 6, 2021); see Jackson v. Johnson & Johnson, No. 1:11-CV-3903-TWT, 2022 WL 110422, at *5 (N.D. Ga. Jan. 12, 2022) ("The Defendants' arguments amount to an attack on the sufficiency of the medical literature undergirding his opinions, and the 'identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination.'" (quoting Quiet Tech., 326 F.3d at 1345)).

Coloplast also argues that Dr. Kohli's opinions regarding PVDF mesh mid-urethral slings should be excluded because such slings are not available in the United States. (Doc. # 92 at 26-27). In support, Coloplast cites a case from the District of Colorado, which held that an expert's testimony about two alternative devices was irrelevant because neither was available in the United States. Wood v. Am. Med. Sys. Inc., No. 120CV00441DDDKLM, 2021 WL 1178547, at *10 (D. Colo. Mar. 26, 2021). As the Wood court noted, "[t]o recover for a claim of negligent design in Colorado, a plaintiff must show not only that the alternative is safer but that it was practicable and available at the time the allegedly dangerous product was sold." Id. (internal

quotation marks omitted). However, as previously discussed, under Florida law, "a plaintiff need not demonstrate the existence of a reasonable alternative design for a strict liability design defect claim." Geery, 2021 WL 2580144, at *5; Aubin, 177 So. 3d at 511. Accordingly, the fact that PVDF mid-urethral slings were not available in the United States at the time of Ms. Dyer's surgery does not render Dr. Kohli's opinion irrelevant in this case.

Although a plaintiff is not required to offer evidence of a reasonable alternative design, the Florida Supreme Court has stated that "nothing precludes the plaintiff in proving his or her case from showing that alternative safer designs exist — or for that matter precludes the defendant from showing that it could not have made the product any safer through reasonable alternative designs." Aubin, 177 So. 3d at 511. Here, Dr. Kohli stated that PVDF mid-urethral slings were FDA cleared in 2007 and that "[t]here appears to be no reason other than costs that PVDF midurethral slings are not offered in the United States." (Doc. # 111-1 at 11). The Court finds Dr. Kohli's opinions on PVDF mid-urethral slings relevant to the issue of whether "alternative safer designs exist." Aubin, 177 So. 3d at 511; see Jackson, 2022 WL 110422, at *6 (declining to exclude expert testimony regarding an

alternative PVDF mesh device that was not on the market at the time of plaintiff's surgery because "whether or not the PVDF mesh was commercially available at the time . . . does not bear on the feasibility of a safer an[d] equally efficacious design" (internal quotation marks omitted)).

The Motion is denied as to this issue.

### 5.    Inadequate Safety Testing

Dr. Kohli opines that Coloplast failed to perform adequate safety testing on the Aris. (Doc. # 92-1 at 26). Coloplast argues that Dr. Kohli is unqualified to opine on the matter and, alternatively, that his opinion is unreliable. (Doc. # 92 at 27-28). The Court agrees.

Dr. Kohli is a urogynecologist with decades of experience as a pelvic surgeon. (Doc. # 92-1 at 1). But "[e]xperience as a surgeon alone . . . does not translate into experience with or knowledge about the appropriate testing a medical device manufacturer should undertake when preparing a product for the market." Trevino v. Boston Sci. Corp., No. 2:13-CV-01617, 2016 WL 2939521, at *13 (S.D.W. Va. May 19, 2016). Although Dr. Kohli is also chief medical officer of a medical device company, there is no indication that he has experience in testing medical devices. (Doc. #

25

92-1 at 4). Accordingly, Dr. Kohli is not qualified to testify as to the adequacy of Coloplast's safety testing.

In any event, even if Dr. Kohli were qualified to opine on the adequacy of the safety testing, Dr. Kohli has not offered any support for his conclusory opinion that Coloplast "rushed to market with Aris to avoid loss of market share without adequate safety testing." (Id. at 11). Dr. Kohli references an internal Coloplast document stating that the "promising results" from a study of the Aris "need long-term investigation," but he does not explain how this demonstrates that Coloplast failed to adequately test the Aris prior to its commercial release. (Id.). Accordingly, Dr. Kohli's opinion is unreliable. See Frazier, 387 F.3d at 1261 ("[I]t remains a basic foundation for admissibility that '[p]roposed [expert] testimony must be supported by appropriate validation — i.e., 'good grounds,' based on what is known.'" (quoting Daubert, 509 U.S. at 590)); Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329, 1344 (11th Cir. 2003) ("[A]n expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion.").

The Motion is granted as to this issue.

26

### 6.   **Deficient IFU**

Dr. Kohli opines that the Aris's IFU "were inadequate to allow physicians to make responsible treatment choices and allow patients to give proper informed consent." (Doc. # 92-1 at 26). Coloplast argues that Dr. Kohli is not qualified to render an opinion on the IFU and, in any event, that Dr. Kohli has not provided any "basis for reaching the conclusion that the purported inadequacy of Aris's IFU renders the device 'not reasonably safe' or makes it 'impossible' for implanting physicians to obtain informed consent." (Doc. # 92 at 28).

The Court finds Dr. Kohli qualified to opine on the adequacy of the Aris's IFU as, in addition to his surgical experience, Dr. Kohli "assist[s] in the drafting and editing of IFUs" at a medical device company. (Doc. # 92-1 at 27). See In re: Ethicon Inc., No. 2327, 2016 WL 4582220, at *3 (S.D.W. Va. Sept. 1, 2016), adopted sub nom. In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig., No. 2327, 2017 WL 4769671 (S.D.W. Va. July 21, 2017) ("While an expert who is an obstetrician and gynecologist may testify about the specific risks of implanting mesh and whether those risks appeared on the relevant IFU, the same expert must possess additional expertise to offer expert testimony about what information should or should not be included in an IFU.");

Arevalo, 2020 WL 3958505, at *5 (finding Dr. Kohli qualified to opine about the adequacy of the Aris's IFU).

However, as the Arevalo court determined, "Dr. Kohli does not provide an adequate basis for, or a reliable methodology used, in reaching his conclusions that the inadequacy of the instructions and warnings renders Aris 'not reasonably safe' and made it 'impossible' to obtain informed consent." Arevalo, 2020 WL 3958505, at *5. Accordingly, Dr. Kohli's opinions in this regard are excluded.

The Motion is granted as to this issue.

> 7. **Legal Conclusions, Summaries, and Opinions on Coloplast's Knowledge, Intent, or State of Mind**

Finally, Coloplast asks the Court to exclude Dr. Kohli's opinions to the extent they contain impermissible legal conclusions, summaries, and speculation on Coloplast's corporate intent, knowledge, or state of mind. (Doc. # 92 at 29).

> a. **Legal Conclusions**

"While it is well established that a qualified expert in a civil case may offer his opinion on an ultimate issue in a case, experts may not testify to the legal implications of conduct or tell the jury what result to reach." Commodores

28

Ent. Corp. v. McClary, 879 F.3d 1114, 1128 (11th Cir. 2018) (internal citation and quotation marks omitted).

In response to the Motion, Ms. Dyer states that she "does not intend to elicit opinions that draw a legal conclusion" but argues that "Dr. Kohli should not be precluded from testimony that uses terms that do not have a separate, distinct, and specialized meaning in the law." (Doc. # 120 at 24). The Court agrees with Ms. Dyer.

The Motion is granted on this issue. But Dr. Kohli "is not precluded from offering testimony that uses terms that do not have a separate, distinct, and specialized meaning in the law." Warren v. C. R. Bard, Inc., No. 8:19-cv-2657-TPB-JSS, 2020 WL 3567299, at *4 (M.D. Fla. July 1, 2020).

### b. Summaries of Corporate Documents and Speculation on Coloplast's Knowledge, Intent, or State of Mind

"Generally, experts may not render opinions as to a party's knowledge or state of mind." Redding v. Coloplast Corp., No. 6:19-cv-1857-CEM-DAB, 2020 WL 13882977, at *7 (M.D. Fla. Nov. 30, 2020) (internal quotation marks omitted). But "an expert may testify as to a review of internal corporate documents solely for the purpose of explaining the basis for his or her opinions — assuming the opinions are

29

otherwise admissible." Id. (internal quotation marks omitted); Humleker v. Boston Sci. Corp., No. 6:19-cv-121-GAP-EAK, 2020 WL 6870852, at *10 (M.D. Fla. Oct. 2, 2020). "[S]imply parroting documents or other testimony does nothing to assist the trier of fact." Salinero v. Johnson & Johnson, No. 1:18-cv-23643-UU, 2019 WL 7753453, at *18 (S.D. Fla. Sept. 5, 2019).

Ms. Dyer represents that she will not elicit opinions on Coloplast's state of mind. (Doc. # 120 at 25). However, Ms. Dyer argues that this "does not mean that Dr. Kohli should be prohibited from providing testimony on factual information found in Defendant's documents, to the extent that information forms the basis of his opinions." (Doc. # 120 at 25). The Court agrees with Ms. Dyer.

The Motion is granted on this issue. Dr. Kohli "will not be permitted to testify as to the knowledge, state of mind, or corporate intent of [Coloplast]" or summarize corporate documents "but will be allowed to testify as to his review of the corporate documents solely for the purpose of explaining the basis of his opinions." Redding, 2020 WL 13882977, at *7.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)    Defendant Coloplast Corp.'s Rule 702 Motion to Exclude Expert Opinions of Neeraj Kohli, M.D. (Doc. # 92) is **GRANTED** in part and **DENIED** in part.

(2)    Dr. Kohli may not opine that: (1) the Aris has an unacceptably high rate of complications, (2) the Aris was not adequately tested, or (3) the Aris's IFU render the device not reasonably safe or make it impossible for physicians to obtain informed consent.

(3)    Dr. Kohli also may not offer legal conclusions, summarize Coloplast documents, or speculate on Coloplast's intent, knowledge, or state of mind.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of July, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

31