UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANA DYER,

     Plaintiff,

v.                   Case No. 8: 24-cv-2867-VMC-SPF

COLOPLAST CORP. and COLOPLAST
MANUFACTURING US, LLC,

     Defendants.

_____/

**ORDER**

This matter is before the Court on consideration of Defendant Coloplast Corp.'s ("Coloplast") Motion for Summary Judgment (Doc. # 93), filed on April 15, 2026. Plaintiff Diana Dyer responded on May 6, 2026. (Doc. # 123). Coloplast replied on May 20, 2026. (Doc. # 136). For the reasons that follow, the Motion is granted in part and denied in part.

I.    **Background**

In December 2020, Ms. Dyer underwent a "a pelvic floor reconstructive surgery that included an Aris surgical mesh implant to treat [her] stress urinary incontinence." (Doc. # 93 at ¶ 1). Coloplast is the manufacturer of the Aris Trans-Obturator Sling System, "an FDA-cleared prescription medical device indicated for the treatment of stress urinary

1

incontinence." (Doc. # 93 at ¶ 2; Doc. # 123-4 at 5, 9-10). In the weeks following the surgery, Ms. Dyer "developed severe pain in her pelvis, groin, and lower extremities, along with numbness and tingling." (Doc. # 123-15 at ¶ 2). Ms. Dyer was later diagnosed with "pudendal neuralgia and obturator neuralgia related to nerve injury, complex regional pain syndrome, and dyspareunia." (Id.). Ms. Dyer "underwent two additional pelvic surgeries, on August 5, 2021, and November 30, 2021, allegedly to address her claimed injuries." (Doc. # 93 at ¶ 2).

Ms. Dyer initiated this action to recover damages for her claimed injuries. (Doc. # 1). In the complaint, Ms. Dyer asserts three causes of action: (1) negligence, (2) strict liability design defect, and (3) strict liability failure to warn. (Id. at 33-47). Ms. Dyer also seeks to recover punitive damages. (Id. at 48-50).

Coloplast moves for summary judgment. (Doc. # 93). Ms. Dyer has responded (Doc. # 123), and Coloplast has replied. (Doc. # 136). The Motion is ripe for review.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590,

3

593-94 (11th Cir. 1995) (quoting Celotex Corp., 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. Analysis

### A. Coloplast Has Failed to Demonstrate that Ms. Dyer Cannot Prove Specific Causation

Coloplast argues that Ms. Dyer's claims fail as a matter of law because she has not offered admissible expert testimony that a defect of the Aris caused her claimed injuries. Specifically, Coloplast contends that "the opinions of [Ms.

4

Dyer's] specific causation expert, Dr. Kohli, fail to satisfy the standard for expert testimony required under Federal Rule of Evidence 702." (Doc. # 93 at 5). However, in ruling on Coloplast's <u>Daubert</u> motion regarding Dr. Kohli, the Court rejected Coloplast's arguments to exclude Dr. Kohli's specific causation opinions. Accordingly, this is not a basis for granting summary judgment in favor of Coloplast.

**B.    The Design Defect Claims Are Not Impliedly**
**Preempted by Federal Law**

Next, Coloplast argues that Ms. Dyer's design defect claims are impliedly preempted by federal law "[b]ecause Coloplast could not change the Aris' design (and especially the material used for the Aris) without obtaining advance permission from FDA." (Doc. # 93 at 6). The Court disagrees.

"Where state and federal law directly conflict, state law must give way." <u>PLIVA, Inc. v. Mensing</u>, 564 U.S. 604, 617 (2011) (internal quotation marks omitted). "[S]tate and federal law conflict where it is impossible for a private party to comply with both state and federal requirements." <u>Id.</u> at 618 (internal quotation marks omitted). "The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." <u>Id.</u> at 620.

5

Coloplast asserts that, pursuant to 21 C.F.R. § 807.81(a)(3), it "could not unilaterally decide to use a different material for the Aris" without going through the FDA's § 510(k) process. (Doc. # 93 at 8). The § 510(k) process requires "every manufacturer intending to market a new device . . . to submit a 'premarket notification' to the FDA." Medtronic, Inc. v. Lohr, 518 U.S. 470, 478 (1996). "If the FDA concludes on the basis of the § 510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis." Id.

The express preemption provision of the Medical Device Amendments of 1976 ("MDA") preempts state regulations that are "different from, or in addition to, any [MDA] requirement applicable . . .  to the device." 21 U.S.C. § 360k(a)(1). Coloplast acknowledges that the Supreme Court has held that § 360k does not preempt liability for state-law design defect claims. Lohr, 518 U.S. at 501-02. However, Coloplast argues that Lohr "does not affect the implied preemption analysis." (Doc. # 93 at 10). Coloplast is correct that "[t]he existence of an express preemption clause . . . neither bars the ordinary working of conflict preemption principles nor by itself precludes a finding of implied preemption." This That

& Other Gift & Tobacco, Inc. v. Cobb Cnty., 285 F.3d 1319, 1323 n.1 (11th Cir. 2002). Nevertheless, "implied preemption does not arise here." Kaiser v. Johnson & Johnson, 947 F.3d 996, 1009 (7th Cir. 2020) (holding that implied preemption did not bar plaintiff's design defect claim).

"[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes." Mensing, 564 U.S. at 623–24. Under Florida law, "a manufacturer has a duty to use reasonable care to design a product that is reasonably safe for its intended use." Hovey v. Tracpatch Health Inc., No. 3:22-cv-970-WWB-LLL, 2025 WL 2373377, at *6 (M.D. Fla. Aug. 6, 2025). "Nothing in the § 510(k) regulatory scheme" prevented Coloplast from complying with Florida's standard of care "before seeking § 510(k) clearance" for the Aris. Kaiser, 947 F.3d at 1009. Indeed, the Lohr Court noted that "[t]here is no suggestion in either the statutory scheme or the legislative history that the § 510(k) exemption process was intended to do anything other than maintain the status quo with respect to the marketing of existing medical devices and their substantial equivalents. That status quo included the

7

possibility that the manufacturer of the device would have to

defend itself against state-law claims of negligent design."

Lohr, 518 U.S. at 494.

As Coloplast "had complete and independent control over"

the Aris's "design before it sought § 510(k) clearance for

the device," "[i]t was not impossible to simultaneously

comply with federal and state law." Kaiser, 947 F.3d at 1010.

Accordingly, Ms. Dyer's design defect claims are not

impliedly preempted. See Id. at 1009-1010 (holding that

design defect claim was not impliedly preempted as the §

510(k) regulatory scheme "did not stop Ethicon from

satisfying its state-law duties regarding Prolift's

design *before* it filed its premarket notification seeking

substantial-equivalence clearance" (emphasis in original)).

The Motion is denied as to the design defect claims.

C.    **Summary Judgment Is Not Warranted on the Failure to
      Warn Claims**

Coloplast argues that Ms. Dyer's failure to warn claims

fail as a matter of law because (1) the Aris's instructions

for use ("IFU") are adequate as matter of law and (2) Ms.

Dyer "fails to prove proximate causation under Florida's

learned-intermediary doctrine." (Doc. # 93 at 11). The Court

is not persuaded.

8

"Under Florida law, to succeed on a failure to warn claim a plaintiff must show (1) that the product warning was inadequate; (2) that the inadequacy proximately caused her injury; and (3) that she in fact suffered an injury from using the product." Eghnayem v. Boston Sci. Corp., 873 F.3d 1304, 1321 (11th Cir. 2017). "Florida law applies the learned intermediary doctrine whereby the duty to warn runs to the physician and not the patient." Bailey v. Janssen Pharmaceutica, Inc., 288 F. App'x 597, 608 (11th Cir. 2008). "This is so because the prescribing physician acts as an intermediary between the manufacturer and the consumer, weighing the potential benefits of a device against the dangers in deciding whether to recommend it to meet the patient's needs." Eghnayem, 873 F.3d at 1321. "Consequently, to satisfy the causation element, a plaintiff must show that her treating physician would not have used the product had adequate warnings been provided." Id.

### 1.   **Adequacy of the IFU**

A "manufacturer's adequate warning to a physician breaks the causal chain and precludes a failure-to-warn claim." Salinero v. Johnson & Johnson, 995 F.3d 959, 965 (11th Cir. 2021). "'While in many instances the adequacy of warnings . . . is a question of fact,' the Florida Supreme Court has

held that 'it can become a question of law where the warning is accurate, clear, and unambiguous.'" Eghnayem, 873 F.3d at 1321 (quoting Felix v. Hoffmann-LaRoche, Inc., 540 So.2d 102, 105 (Fla. 1989)). "[T]he adequacy or inadequacy of the warning to inform a physician must, except in the more obvious situations, be proved by expert testimony." Id. (quoting Upjohn Co. v. MacMurdo, 562 So.2d 680, 683 (Fla. 1990)). "To warn adequately, the [warning] label must make apparent the potential harmful consequences." Farias v. Mr. Heater, Inc., 684 F.3d 1231, 1233 (11th Cir. 2012) (internal quotation marks omitted). "Generally, [t]he warning must be of such intensity as to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger." Eghnayem, 873 F.3d at 1321 (internal quotation marks and citation omitted). "But [w]hen a warning is designed to inform a 'learned intermediary,' it is somewhat easier to establish the adequacy of the warning because it will be read and considered by a trained expert." Id. at 1321–22 (internal quotation marks omitted).

Coloplast argues that the warnings for the Aris were adequate as a matter of law because the IFU "contained information about each injury [Ms. Dyer] now claims: vaginal/groin pain and persistent OAB [overactive

10

bladder]/incontinence." (Doc. # 93 at 12) (internal quotation marks omitted). As Ms. Dyer represented in her response to Coloplast's motion to exclude the opinions of Dr. Kohli that she "will not claim at trial that the Aris caused or contributed to [her] incontinence or overactive bladder" (Doc. # 120 at 11), the Court limits its analysis to Ms. Dyer's claimed pain-related injuries.

In response, Ms. Dyer argues that "while the IFU warned about various categories of adverse events that 'may' occur generally in transvaginal synthetic slings, it failed to warn about many of the specific complications the Aris caused [Ms.] Dyer, including pudendal neuralgia, obturator neuralgia, spastic pelvic floor syndrome, or complex regional pain syndrome." (Doc # 123 at 6). Ms. Dyer further argues that the IFU are inadequate because they: (1) did not include "the risk of complications with the Aris, as compared to other slings," (2) did not disclose aspects of the Aris's design which Ms. Dyer alleges are defective, (3) downplayed the nature and prevalence of the risk of lifelong disabling pain, and (4) did not mention that "transobturator tape ('TOT') polypropylene midurethral slings present very different failure rates and complication risks from retropubic slings." (Id. at 7-9).

11

The Court is not convinced that the warnings in the IFU were adequate as a matter of law.

The Aris's IFU contain the following warnings:

Patient counseling should include a discussion that the sling to be implanted is a permanent implant and that some complications associated with the implanted mesh sling may require additional surgery; repeat surgery may not resolve these complications. Serious adverse tissue responses or infection may require removal of mesh, and complete removal of the sling may not always be possible. Individuals may have varying degrees of collagen laydown that may result in scarring.

[ . . . ]

**Adverse Events:**

Adverse events are known to occur with transvaginal synthetic sling procedures and implants. Adverse events following mesh implantation may be de novo, persistent, worsening, transient, or permanent.

(Doc. # 93-1 at 1). The IFU identified various potential adverse effects, including, "[i]nflammation (acute or chronic), "[n]euromuscular symptoms (acute or chronic)," and "[p]erforation or injury of soft tissue (e.g., muscles, nerves, vessels), structures, or organs." (Id.). The IFU state that "[t]he occurrence of these events may require one or more revision surgeries, including removal of the sling. Complete removal of the sling may not always be possible, and additional surgeries may not always fully correct the

12

complications. There may be unresolved pain with or without mesh sling explantation." (Id.).

Dr. Kohli opines that the Aris's IFU are inadequate because they do not include the following specific warnings:

> 1) The increased risk of chronic pain, chronic groin pain, and erosion with the polypropylene transobturator sling when compared to the polypropylene retropubic sling, especially with the extremely stiff . . . Aris device which correlates with the number of adverse reports to the MAUDE database, 2) The risk of obturator and/or pudendal neuralgia and/or myofascial pain from a properly positioned transobturator device, and 3) The not uncommon, life-time duration of new onset pain, that may be disabling, requiring mesh revision surgery from a polypropylene mid-urethral sling."

(Doc. # 123-5 at 9).

Unlike a categorical negative warning that a product should not be prescribed to a certain class of patients, the Aris's IFU merely warn of possible adverse events associated with "transvaginal synthetic sling procedures and implants." (Doc. # 93-1 at 1). True, the IFU warn of general pain-related complications that may be permanent and the possibility that a patient may need to undergo further surgeries. However, Ms. Dyer has offered the expert testimony of Dr. Kohli, who opines that the IFU nevertheless are deficient because, among other things, they do not include specific warnings regarding the comparative risks of the implantation of polypropylene

retropubic slings and the implantation of polypropylene transobturator slings, generally, and the Aris, in particular. (Doc. # 123-5 at 9).

Dr. Kohli's opinion raises a genuine issue of material fact as to whether the warnings in the IFU are adequate. See Diaz-Granados v. Wright Med. Tech., Inc., No. 6:14-cv-1953-JA-TBS, 2016 WL 1337264, at *7 (M.D. Fla. Apr. 1, 2016) (finding a genuine issue of material fact as to the accuracy of the device's warnings even though the IFU warned "of overweight and active patients" and warned "that the device may fracture," as the plaintiff's expert opined that the "warnings were inaccurate and ambiguous"); Zanzuri v. G.D. Searle & Co., 748 F. Supp. 1511, 1517 (S.D. Fla. 1990) (finding that defendant was not entitled to summary judgment where plaintiff's expert testified that the warning was inadequate because "it did not present data to the physician or patient upon which they could make a judgement as to the comparative risk of developing pelvic inflammatory disease while wearing an IUD, versus such risk when using other forms of contraception," and did not indicate the existence of alleged deficiencies in the device). Therefore, Coloplast has not demonstrated that the warnings were adequate as a matter of law.

14

### 2.   <u>Proximate Cause</u>

Alternatively, Coloplast argues that Ms. Dyer's failure to warn claims fail because she cannot prove causation under the learned intermediary doctrine. Specifically, Coloplast argues that any failure to warn did not proximately cause Ms. Dyer's claimed injuries because her implanting surgeon, Dr. Michael J. Wolpmann, "was independently aware of the risks associated with using an Aris device" and "would still prescribe the Aris for [Ms. Dyer] today." (Doc. # 93 at 14, 16). The Court disagrees.

"The learned intermediary rule provides that the failure of the manufacturer to provide the physician with an adequate warning of the risks associated with a prescription product is not the proximate cause of a patient's injury if the prescribing physician had independent knowledge of the risk that the adequate warning should have communicated." <u>Christopher v. Cutter Lab'ys</u>, 53 F.3d 1184, 1192 (11th Cir. 1995). Accordingly, "[t]he causal chain may still be broken even if the manufacturer provides an inadequate warning so long as the physician is aware of the risks or would still recommend the device despite those risks." <u>Salinero</u>, 995 F.3d at 965.

Here, Dr. Wolpmann testified that he was independently aware that the Aris's mesh was substantially stiffer than that used in competitors' slings and that "[a]ll neuralgias are a possible complication . . . of any mesh." (Doc. # 123-13 at 103:11-104:8, 121:6-17). However, Dr. Wolpmann acknowledged that Coloplast did not inform him of various complications associated with alleged defects in the Aris's mesh. (Id. at 106:7-24, 134:1-19, 136:2-20). Dr. Wolpmann stated that he would have expected Coloplast to disclose such information, if true, and that such information may have been important to him as it could bear on patient safety. (Id. at 107:3-108:3; 136:18-137:25). Dr. Wolpmann testified that he "had no access to some of that information" at the time of Ms. Dyer's surgery as it was not provided to him by Coloplast. (Id. at 137:19-138:6).

Considering the totality of Dr. Wolpmann's testimony, there is an issue of material fact as to whether he had independent knowledge of the risks that allegedly caused Ms. Dyer's injuries. See Longoria v. Ethicon, Inc., No. 8:20-cv-2573-TPB-CPT, 2020 WL 8641587, at *3 (M.D. Fla. Dec. 23, 2020) (denying summary judgment in favor of defendant where the doctor testified "that he was aware of much of the information contained in the warning, but he did not specifically testify

16

that he possessed the same knowledge that an adequate warning would have provided"); Humleker v. Boston Sci. Corp., No. 6:19-cv-121-GAP-EJK, 2020 WL 6870852, at *16 (M.D. Fla. Oct. 2, 2020) (finding an issue of material fact as to whether the doctor "had independent knowledge of the risks that caused Plaintiff's injuries" where the doctor "testified she was unaware of at least some complications associated with mesh implantation" (internal quotation marks omitted)).

Dr. Wolpmann did not testify that he would still prescribe the Aris to Ms. Dyer today or that he would have still prescribed the Aris had he been provided with an IFU that contained the information outlined by Dr. Kohli. Rather, Dr. Wolpmann testified that, at the time of Ms. Dyer's surgery, he believed that the potential benefits of the procedure outweighed the possible risks and that he still believed the Aris was the best treatment option for Ms. Dyer at that time. (Doc. # 123-13 at 72:7-:73:4). Dr. Wolpmann further testified that, if he were to resume practicing as an OB/GYN, he would advise someone with pelvic floor problems that the Aris sling is a "good option." (Id. at 75:7-22). Notably, this questioning occurred during Dr. Wolpmann's initial examination by Coloplast's counsel, prior to his questioning by Ms. Dyer's attorney. (Id. at 3). Dr. Wolpmann

17

later testified that he was unaware of complications allegedly associated with the properties of the Aris's mesh, which he acknowledged may have been important to him as it could be relevant to patient safety. (Id. at 106:7-24, 107:3-108:3, 134:1-19, 136:2-20, 137:19-138:6).

"This testimony does not point so overwhelmingly in favor of" Coloplast "that no reasonable jury could find that the failure to warn proximately caused" Ms. Dyer's injuries. Eghnayem, 873 F.3d at 1323 (internal quotation marks omitted). Dr. Wolpmann's testimony falls short of establishing that he "would still recommend the device despite [the] risks" that were not included in the IFU. Salinero, 995 F.3d at 965.

The Motion is denied as to the failure to warn claims.

### D.    Punitive Damages

Coloplast argues that, "without any viable substantive claim, [Ms. Dyer] cannot recover punitive damages as a matter of law." (Doc. # 93 at 19). As the Court has determined that Coloplast is not entitled to summary judgment on the design defect and failure to warn claims, this argument is rejected. Alternatively, Coloplast argues that Ms. Dyer cannot recover punitive damages because there is no "evidence — much less clear and convincing evidence — that Coloplast acted with

18

intentional misconduct or gross negligence with regard to the Aris." (Id. at 20) (internal quotation marks omitted). The Court agrees.

Under Florida law, "[a] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." Fla. Stat. § 768.72(2). Here, Ms. Dyer only argues that Coloplast demonstrated gross negligence (Doc. # 123 at 25), which Florida's punitive damages statute defines as conduct "so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." Fla. Stat. § 768.72(2)(b). The Florida Supreme Court "has recognized that the required level of negligence for punitive damages is equivalent to the conduct involved in criminal manslaughter." Valladares v. Bank of Am. Corp., 197 So. 3d 1, 11 (Fla. 2016). Accordingly, "[i]t would appear that the Florida Supreme Court has all but eliminated punitive damage awards in products liability cases." Tesla, Inc. v. Banner, 411 So. 3d 1, 5 (Fla. 4th DCA 2025), reh'g denied (May 5, 2025), review dismissed, No. SC2025-0672, 2025 WL 1911992 (Fla. July 11, 2025) (internal quotation marks omitted).

19

"Defeating a motion for summary judgment on a claim for punitive damages is an extraordinarily high bar." Nunez v. Coloplast Corp., 461 F. Supp. 3d 1260, 1269 (S.D. Fla. 2020). "Coloplast's burden in its motion for summary judgment is relatively low." Id. "Coloplast is 'not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility.'" Id. (quoting Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)). "It can simply 'point out'" that Ms. Dyer "'has failed to present sufficient evidence'" to support her claim at trial. Id. (quoting Fitzpatrick, 2 F.3d at 1116).

Coloplast argues that there is no evidence of its intentional misconduct or gross negligence regarding the Aris, which Ms. Dyer acknowledges "was cleared by the FDA." (Doc. # 93 at 20) (citing Doc. # 1 at 9). In response, Ms. Dyer reiterates her arguments as to her design defect and failure to warn claims, but she does not identify any evidence suggesting that Coloplast's conduct was "so reckless or wanting in care that it constituted a conscious disregard or indifference" to her "life, safety, or rights." Fla. Stat. § 768.72(2)(b). Accordingly, summary judgment is granted as to this ground. See Thelen v. Somatics, LLC, 672 F. Supp. 3d

20

1216, 1228 (M.D. Fla. 2023) (granting summary judgment in favor of defendant on punitive damages claim as the evidence was "insufficient to allow a reasonable juror to find by clear and convincing evidence that [defendant] or any agent or employee acted with the requisite level of culpability"); Nunez, 461 F. Supp. 3d at 1270 (granting defendant summary judgment on punitive damages claim as plaintiff, whose "response brief largely argue[d] what Coloplast *should have* done or *should have* known," did not meet "the necessary factual predicate in defeating summary judgment" (emphasis in original)).

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

Defendant Coloplast Corp.'s Motion for Summary Judgment (Doc. # 93) is **GRANTED** in part and **DENIED** in part. Summary judgment is granted in favor of Coloplast Corp. on Plaintiff Diana Dyer's claim of punitive damages. The case will proceed to trial on Counts One through Three.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of July, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

21