UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIANA DYER,

Plaintiff,

v. Case No. 8:24-cv-2867-VMC-SPF

COLOPLAST CORP. and COLOPLAST MANUFACTURING US, LLC,

Defendants.
_______________________________/

**ORDER**

This matter is before the Court on consideration of Defendant Coloplast Corp.'s ("Coloplast") Motion to Exclude Expert Opinions of Allyn Needham (Doc. # 90), filed on April 15, 2026. Plaintiff Diana Dyer responded on May 5, 2026. (Doc. # 117). The Motion is denied.

**I. Background**

In December 2020, Ms. Dyer "was surgically implanted with an Aris™ Trans-Obturator Sling System (hereinafter the 'Aris'), a pelvic mesh product and medical device designed, manufactured, and marketed by Defendants," which "was intended to treat pelvic organ prolapse and stress urinary incontinence." (Doc. # 1 at 1). Ms. Dyer alleges that neither she "nor her healthcare providers were warned that the Aris was defective and negligently designed and manufactured."

(Id. at 1-2). Ms. Dyer claims that she "has suffered, and continues to suffer, debilitating injuries" "[a]s a result of being surgically implanted with Defendants' unreasonably dangerous defective pelvic mesh device." (Id. at 2).

Ms. Dyer initiated this action to recover damages for her claimed injuries. (Id.). In the complaint, Ms. Dyer asserts three causes of action: (1) negligence, (2) strict liability design defect, and (3) strict liability failure to warn. (Id. at 33-47).

The case then proceeded through discovery. Ms. Dyer retained economist Allyn Needham, Ph.D., CEA, to opine on Ms. Dyer's lost earning capacity and the present value of her life care plan. (Doc. ## 90-2, 117-4).

Now, Coloplast moves to exclude the opinions of Dr. Needham. (Doc. # 90). Ms. Dyer has responded. (Doc. # 117). The Motion is ripe for review.

## II. Legal Standard

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

> methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589–90. District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. Id.

## III. Analysis

Coloplast challenges Dr. Needham's qualifications to offer "vocational opinions beyond his expertise" as an economist. (Doc. # 90 at 14). Coloplast also argues that Dr. Needham's testimony and opinions are unreliable. The Court addresses each contention in turn.

### A. Qualifications

Coloplast does not argue that Dr. Needham lacks the qualifications to opine as to Ms. Dyer's lost earning capacity. Rather, Coloplast argues that "[d]espite not being a vocational expert, Dr. Needham goes beyond the permissible scope of economic testimony by offering speculative opinions about Ms. Dyer's ability to return to the workforce." (Doc. # 90 at 15). In response, Ms. Dyer asserts that Dr. Needham "made clear in his deposition that he does not do a vocational functional capacity assessment as to what a person can or cannot do" and that he has no opinion on whether Ms. Dyer is unable to work. (Doc. # 117 at 16). Rather, Ms. Dyer contends that Dr. Needham's calculations of her lost earning capacity "are intended to assist the jury should the jury determine

that she is unable to work and an award of lost earning capacity is appropriate." (Id.). The Court agrees with Ms. Dyer.

"Qualified experts may only testify to matters within the scope of their practice area or skill." MCZ/Centrum Flamingo II, LLC v. City of Miami Beach, No. 08-22419-CIV, 2009 WL 10700921, at *3 (S.D. Fla. Aug. 3, 2009). Coloplast contends that Dr. Needham "goes beyond the permissible scope of economic testimony by offering speculative opinions about Ms. Dyer's ability to return to the workforce." (Doc. # 90 at 15). Yet Dr. Needham testified that he has not done "a vocational functional capacity assessment" of Ms. Dyer and will not opine "one way or the other whether or not she can work." (Doc. # 90-1 at 70:16-18; 79:11-17). Dr. Needham further testified that his opinion as to Ms. Dyer's lost earning capacity is for the trier of fact to consider if it believes Ms. Dyer's claim that she is unable to work. (Id. at 79:11-17). Accordingly, Coloplast has not demonstrated that Dr. Needham will testify as to matters outside his area of expertise.

**B. Reliability**

"Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that

the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Id. (citation omitted).

First, Coloplast argues that Dr. Needham's opinion about Ms. Dyer's "pre-injury earning capacity is inherently speculative and methodologically unsound because it relies on an incomplete and inaccurate depiction of Ms. Dyer's work history." (Doc. # 90 at 7). The Court disagrees.

"[I]t is well-established that [a]ny weaknesses in the factual underpinnings of [the expert's] opinion go to the

weight and credibility of [the expert's] testimony, not to its admissibility." Schwartzben v. Nat'l Fire & Marine Ins. Co., No. 22-cv-20755-JEM, 2023 WL 2931410, at *3 (S.D. Fla. Apr. 13, 2023) (internal quotation marks omitted); see also Jones v. Otis Elevator Co., 861 F.2d 655, 663 (11th Cir. 1988) ("[T]he weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility."). Here, Coloplast's challenge to the factual sufficiency of the information upon which Dr. Needham relied in conducting his lost earning capacity analysis goes to weight rather than admissibility. See Garvin v. TransAm Trucking, Inc., No. CV422-062, 2024 WL 1998515, at *9 (S.D. Ga. May 6, 2024) (finding that defendant's challenge to the factual accuracy of the information the economist relied on in performing his calculations went to the weight, not the admissibility of the evidence).

Next, Coloplast argues that Dr. Needham's opinion regarding Ms. Dyer's work-life expectancy is unreliable because, in his report, "Dr. Needham assumes that Ms. Dyer will remain in the workforce until age 72," which "corresponds to the 75th percentile in the statistical work-life tables for females with a master's degree." (Doc. # 90 at 11). Coloplast contends that "Dr. Needham's analysis does not

account for any individualized, case specific basis to justify placing Ms. Dyer in this elevated percentile.” (Id. at 12). In response, Ms. Dyer argues that there is evidence that she would have remained in the workforce until age 72 but that, in any event, Dr. Needham also included a spreadsheet that calculated Ms. Dyer’s lost earning capacity based on an average statistical work-life expectancy. (Doc. # 117 at 11-13).

The Court disagrees with Coloplast. Calculating an award for lost earning capacity “involves four steps: estimating the loss of work life resulting from the injury or death, calculating the lost income stream, computing the total damage, and discounting that amount to its present value.” Buland v. NCL (Bahamas) Ltd, 992 F.3d 1143, 1150 (11th Cir. 2021) (internal quotation marks omitted). Coloplast does not argue that the statistical work-life table relied upon by Dr. Needham is unreliable. Rather, Coloplast challenges the factual basis for Dr. Needham’s calculation of Ms. Dyer’s lost earnings based on the assumption that she would have retired at age 72. Coloplast’s argument regarding the factual basis for that opinion goes to the weight, rather than the admissibility, of Dr. Needham’s testimony. Jones, 861 F.2d at 663 (“[T]he weaknesses in the underpinnings of the expert’s

opinion go to its weight rather than its admissibility.”). Moreover, Dr. Needham also calculated Ms. Dyer’s lost earning capacity based on a retirement age of 70, which corresponds to the fiftieth percentile in the work-life table, for the trier of fact’s consideration if it does not believe that Ms. Dyer would have worked until age 72. (Doc. # 90-1 at 130:23-131:2, 135:19-136:4; Doc. # 117-5). Under the circumstances, exclusion is not warranted.

Finally, Coloplast argues that Dr. Needham’s opinions are unreliable to the extent they are based on the opinions of Ms. Dyer’s life care planner, Leigh Anne Levy. (Doc. # 90 at 16-18). However, the Court rejected Coloplast’s argument that Ms. Levy’s opinions are unreliable in denying Coloplast’s motion to exclude Ms. Levy’s opinions. (Doc. # 145). Therefore, this is not grounds to exclude Dr. Needham’s testimony.

In sum, the Court finds Dr. Needham’s methodology sufficiently reliable. The alleged flaws in Dr. Needham’s methodology raised by Coloplast should be addressed during cross-examination. See Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (“Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking

[debatable] but admissible evidence." (citations and internal quotation marks omitted)).

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Coloplast Corp.'s Motion to Exclude Expert Opinions of Allyn Needham (Doc. # 90) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 11th day of August, 2026.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE